UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

H. PATRICK BARCLAY, 97A5659

                                 Plaintiff,             DECISION AND ORDER

vs                                       03-CV-6585 CJS

OFFICER POLAND, et al.,

                                 Defendants.
_____

INTRODUCTION

Plaintiff was formerly an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff, proceeding *pro se*, maintains that Defendants violated his federal constitutional rights in various ways. Now before the Court is Defendants' motion [#92] for partial summary judgment.[1] The application is granted in part and denied in part.

BACKGROUND

The Court has already issued several written decisions in this action, addressing motions to amend by Plaintiff and a motion to dismiss by Defendants. The combined effect of those decisions is that the following claims are now pending: A failure to protect claim against Counselor Warner (or Warne) ("Warner") and Director of Classification and Movement Theresa Knapp-David ("Knapp-David"); a retaliation claim against Corrections Officer Poland ("Poland"), Corrections Officer Lowe ("Lowe"), Corrections Officer Mehnert ("Mehnert"), Corrections Officer Schuck ("Schuck"), Counselor Roach ("Roach"), Education Director Michael Szemplenski

---

[1] Defendants provided Plaintiff with the "*Irby*" Notice to Pro Se Litigants as required by Local Rule of Civil Procedure 56.2. (Docket No. [#92-2] ).

1

("Szemplenski"), Warner, Corrections Officer Boxer ("Boxer") and Deputy Commissioner John Nutal ("Nutal"); an excessive force claim against Lowe, Mehnert and John Doe defendants; a denial of medical care claim against Lowe, Mehnert and John Doe defendants; a procedural due process claim against Superintendent James Conway ("Conway"), Director of Special Housing Donald Selsky ("Selsky"), Lowe, Mehnert and Schuck; a claim for denial of access to grievance procedures/denial of court access against Conway, Selsky, Assistant Commissioner Edward McSweeney ("McSweeney") and John Doe defendants; a claim for denial of religious practices against Lowe and John Doe defendants; an equal protection racial discrimination claim against Warner, Roach and Szemplenski; and a racial discrimination claim under § 1983 and § 1981, in connection with educational programming, apparently also against Warner, Roach and Szemplenski. *See*, Docket nos. [#7] at pp. 7, 9; [#17]; [#52]; [#67]; [#76] & [#77].

On November 21, 2011, Plaintiff filed a complaint [#80] that was purportedly in response to the Court's Order [#76] granting his motion to amend [#69]. However, Plaintiff attempted to assert various claims beyond what the Court permitted, such as claims for libel, defamation, slander, fraud, conspiracy to defraud, negligent misrepresentation, fraudulent inducement, fraudulent misrepresentation and fraud in the factum. None of those claims are part of this action. The only claims that are part of this action are those identified in the preceding paragraph.

In connection with these claims Plaintiff has sued numerous "John Doe" defendants. By Decision and Order [#7] issued on December 14, 2004, the Court directed Plaintiff to "identify the 'John Doe' defendants named in the complaint through discovery as soon as possible, and then apply to this Court for an order directing amendment of the caption and service on these defendants as soon as they have been identified." Plaintiff subsequently had

several years in which to conduct discovery. In that regard, Plaintiff filed at least two motions to compel. On June 22, 2010, Plaintiff filed a motion to compel [#61] which alleged that Defendants had "failed to produce the discipline records on the Defendants in this action that relevant to Plaintiff's prosecution of this action, and the 'John Doe' defendants." [sic] Docket No. [#61] at ¶ 46. On January 21, 2011, the Honorable Marian W. Payson, United States Magistrate Judge, issued a Decision and Order [#74] denying that application. On May 1, 2012, Magistrate Judge Payson issued a final Scheduling Order [#85] in this action, which directed that all discovery be completed by October 2, 2012, and that all motions to compel be made returnable no later than November 2, 2012. *See*, Docket no. [#85] at ¶ 2. Plaintiff did not file any additional motions to compel, and discovery is closed.

On January 18, 2013, Defendants filed the subject motion [#92] for partial summary judgment. The motion seeks essentially three types of relief: 1) an order granting summary judgment as to the John Doe defendants, who have never been identified or served; 2) an order granting summary judgment to Knapp-David on the "failure to protect claim"; and 3) an order granting summary judgment as to the racial discrimination claims. Defendants' motion also requested summary judgment as to state-law fraud claims, however, those were already dismissed by the Court. *See*, docket no. [#17] at p. 4; docket no. [#76] at p. 2, n. 3; docket no. [#77]. Consequently, the state tort claims are not a part of this action.[2]

On May 8, 2013, Plaintiff filed a response [#97] to the motion.

The Court directed that Defendants could submit reply papers by May 22, 2013, however, they chose not to do so.

---

[2] Plaintiff acknowledges as much, since in his opposition papers he asks the Court to "reconsider" its decision regarding the tort claims. *See*, Plaintiff's Response [#97] at p. 11. That request is denied.

DISCUSSION

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

The John Doe Claims

Defendants contend that the John Doe defendants should be dismissed from the action, since Plaintiff has failed to identify or join them within the time allowed by the Court, despite having had ample opportunity to conduct discovery. Plaintiff counters that his failure to learn the names of the John Doe defendants is defendants' fault. However, the Court disagrees. Plaintiff had the opportunity to learn the names of the John Doe defendants through discovery, but failed to do so. Plaintiff has not identified the John Doe defendants or served them, and the Court has no jurisdiction over them. Accordingly, the John Doe defendant claims are dismissed. *See, Delrosario v. City of New York*, No. 07 Civ.2027(RJS), 2010 WL 882990 at *5 (S.D.N.Y. Mar. 4, 2010) ("Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those

Defendants without prejudice.") (citations omitted).

*The Failure-To-Protect Claim Against Knapp-David*

Plaintiff contends that after a corrections officer threatened to harm him, he wrote a letter to DOCCS Commissioner Glenn Goord, dated July 8, 2002, requesting a transfer to another facility. Second Amended Complaint [#80] at ¶ 12.  He further contends that on July 30, 2002, Knapp-David responded on  Goord's behalf, and denied the transfer request, stating that Plaintiff's current placement was appropriate, but indicating that he could still pursue a transfer at the facility level. *Id*. at ¶ 13.  Specifically, Plaintiff's letter to Goord, entitled "Re:  Request for Transfer," states:

> I hereby request that you direct your staff supervisor for movement and control to have I H. Patrick Barclay, 97A5659 forthwith transferred from Attica Correctional Facility to another correctional facility due to the following.
>
> That I am currently engaged with an active lawsuit in the United States District Court Western District of New York against the State of New York[,] the Superintendent of Attica Correctional Facility Mr. Herbert, the medical doctor 'Robert Takos,' and some of the corrections officers.  All employees at Attica currently.  The Court's index numbers are 01-CV-6001 B and 01-CV-6109 CJS (B).
>
> That upon my return to Attica Correctional Facility from two and more years of illegal confinement at Upstate Correctional Facility, 809 Barehill Road, Malone New York 12953 Special Housing Unit, which was administratively reversed on May 30, 2002, I was threatened by the Admittance Officers.  Moreover, I had filed a grievance as to the fact and the retaliation practices against me at Attica.
>
> I am a disable prisoner who ambulates with the aid of a ca[ne] and because of my ongoing litigation against one of the medical doctor 'Robert Takos' I has suffered retaliatory practices the medical staff member Robert S. Magre, R.P.A. DEA# 0727125 who is a strong supporter of Dr. Robert Takos, M.D.

> That so far the treatment given to me by Mr. Magre and the correction officers has placed my life, care and custody in gross danger requiring my forthwith transfer from Attica at this end.

Docket No. [#92-3], Sheehan Declaration, Ex. B. On July 30, 2002, Knapp-David sent a responding letter which states:

> Commissioner Goord has referred your June 8, 2002, letter to me for a response.
>
> Your current placement is appropriate. You should seek the assistance of your assigned correction counselor as your counselor is in the best position to advise you in matters regarding transfer and to make an initial evaluation of suitability for same. Procedurally, transfers are initiated at the facility level and forwarded to Central Office for a final decision.

*Id*. Over three months later, on November 20, 2002, Plaintiff contends that Corrections Officers Lowe and Mehnert assaulted him, breaking a bone in his hand. *Id*. at ¶ 35.[3] Plaintiff contends that Knapp-David is liable for failing to protect him from being assaulted. *Id*. at ¶ ¶ 76-86.

Knapp-David maintains, however, that she did not have notice that Plaintiff was in imminent danger. *See*, Def. Memo of Law [#92-4] at p. 9 ("[P]laintiff's letter to former defendant Goord was not sufficiently specific about the actual significant risk that plaintiff alleges that he faced. . . . [P]laintiff has not set forth specific facts showing that Knapp-David was aware of a specific threat."). Plaintiff responds that his letter gave notice that his "life, care and custody [were] in gross danger." Pl. Response [#97] at p. 13. However, the Court disagrees.

"A plaintiff may recovery for injuries received while in custody 'if the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a 'substantial risk of

---

[3]The incident on November 20, 2002, involved Plaintiff not being allowed to attend a Ramadan dinner. See, Pl. Deposition at p. 46, 48. At that time Plaintiff was housed in the Minimum Privilege Company area of the cell block. Id. at p. 58.

serious harm' or from the official's deliberate indifference to that risk.'" *Murray v. Pataki*, No. 9:03-CV-1263 (LEK/RFT), 2007 WL 956941 at *6 (N.D.N.Y. Mar. 29, 2007) (*quoting Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997)), *affirmed*, 378 Fed.Appx. 50 (2d Cir. May 24, 2010). In that regard, *Farmer v. Brennan* established a two-pronged test:

> First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." [*Farmer v. Brennan*, 511 U.S. 825,834, 114 S.Ct. 1970 (1994)]. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. *Id*. Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

*Hines v. Lacy*, 189 F.3d 460, 1999 WL 642915 at *3 (2d Cir. Aug. 20, 1999) (table). In this case, Plaintiff's vague letter could not have alerted Knapp-David that he was facing a substantial risk of serious harm. Nor does the record indicate that Knapp-David was indifferent to his request. Instead, she merely advised Plaintiff that he should discuss his transfer request with his counselor. Accordingly, Knapp-David is entitled to summary judgment on the failure-to-protect claim.

<u>The Racial Discrimination Claims</u>

Plaintiff makes a number of vague allegations that Defendants discriminated against him because of his race, in violation of § 1983 and § 1981. For example, Plaintiff contends that after he filed grievances he was "ill treated" because he is black. *Id*. at ¶ ¶ 56-59. He further contends that defendants violated his procedural due process rights in connection with a disciplinary hearing in part because of "racial discrimination." *Id*. at ¶ ¶ 61, 67. Plaintiff also includes allegations of racial discrimination as part of his religious discrimination claim. *Id*. at

¶ 91.

More specifically, though, Plaintiff contends that he suffered racial discrimination in connection with his educational programming at Attica. Plaintiff contends that Warner, Roach and Szemplenski attempted to force him into a "pre-GED" program, based on fabricated test scores because he is black. The primary gist of Plaintiff's claim is that defendants falsely indicated that he took an educational placement test and scored at the 5th grade or 6th grade level. *See*, docket no. [#80] at ¶ 151 ("[Defendants] caused to be made false representation/statement on D.O.C.S. computer that Plaintiff took a test and scored at the 5th and 6th grade level because of their racial discrimination and hate towards Plaintiff, a black man in prison having an advance level education and . . . refused to program him appropriately educationally."). Plaintiff maintains that he never took such a test. *Id*. at ¶ 155 ("Defendants knew that no test was ever given to Plaintiff, or taken by Plaintiff, since being sentenced to [DOCCS]."). Plaintiff asserts that defendants practiced

> racial discrimination against him as a black person in his education specifically by making false statement on their computers claiming to have given Plaintiff a test for which he score at the 5th and 6th grade level, and defendants published same to the world viewing. . . . the defendants intentional racial discrimination against Plaintiff was furthered to be preventing Plaintiff from doing any sort of graduate studies while in prison, and to be preventing him from teaching any other racial minority black persons maritime studies of circumnavigation due to their racial animus intention. Defendants specifically had total access to Plaintiff's sentencing order that clearly stated his higher than high school program, and intentionally refused to follow such educational lead, and without seeking further educational information from the court of law as to her sentencing document order or from Plaintiff on his educational background, defendants with their racial discrimination intent made false statement on D.O.C.S. computers. . . . No white prisoner who was similarly situated was treated with such hate, and indifference as generated against Plaintiff, a black man[.]

8

*Id*. at ¶ ¶ 95-97, 101.

Plaintiff indicates that he provided defendants with information to prove his true educational level, but they persisted in attempting to force him into a pre-GED program. Plaintiff alleges that

> D.O.C.S. officials has a very bad policy in seeking out black prisoners with higher educational institute diploma at undergraduate and graduate levels to be demanding from them lower level diploma (such as high school) only to be practicing racial discrimination and preventing them from certain programs, and no doing the same with white ..... [sic]

Second Amended Complaint [#80] at ¶ 30; *see also id*. at ¶ 159 ("[Defendants] did in fact encourage themselves to be racial discriminative, and having jealously, hated Plaintiff, a black man imprisoned with a college degree from the seamen church institute, and licentiate merchant marine officer third mate." [sic] ).

Defendants contend that Plaintiff cannot show that there was an intent to discriminate against him. More specifically, Defendants indicate that during Plaintiff's deposition he made only a single reference to "racial slurs." Def. Memo of Law [#92-4] at pp. 10-11 (referring to Plaintiff's deposition at p. 78). In that regard, at deposition, Plaintiff actually testified in pertinent part as follows:

> Q. You're also making a claim of racial discrimination and violation of equal protection? . . . [W]hat does that claim relate to?
>
> A. Well, that's relating to the treatment that I got that was given – that was quite different to other, you know, equally situated individuals, okay, who were white. They were prisoners, we all were in Minimum Privilege, but they were given privileges that was supposed to also be given to me. Because the division of privileges to those who were incarcerated, okay, should be equally divided amongst all the individuals at the time in Minimum Privilege. But in my case, that division was denied me, and it was given to others.

> Q. So this claim of racial discrimination in violation of equal protection . . . relates to your being placed in Minimum Privilege Company?
>
> A. Yes, and my education and everything, too, yes.
>
> Q. And then you're also asserting a claim for racial discrimination with respect to education; is that right?
>
> A. Yes, yes.

Pl. Dep. transcript at pp. 52-53. Plaintiff indicated generally that he had been subjected to racial slurs. *Id*. at 53 ("I would not even call it epithets, there were racial slurs that was, you know, generated against me."); *id*. at p. 65 (Indicating that Lowe and Mehnert used racial slurs when they allegedly assaulted him in November 2002: "Well, they were using all the nigger slurs. . . . They were calling me rapist, they were calling me all different names."); *id*. at 86-87 (Plaintiff vaguely suggested that defendant Boxer used some "nigger" reference: "He said I'm trying to be too smart, you know you niggering thing, you this and you that." A few moments later, Plaintiff reiterated what Boxer supposedly said but omitted any "nigger" reference: "He said, 'You're not going to get no recreation.' He said, 'If you want recreation, then go to PC or go into GED class because you think you are too smart.").

Defendants maintain that such testimony is too vague and insubstantial to survive summary judgment. Defendant's argument on this point is cursory, and cites just two cases – *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) and *Hogan v. Fischer*, 2012 U.S. Dist. LEXIS 146511 at *16-17 [2012 WL 4845609] (W.D.N.Y. Oct. 10, 2012). In *Purcell v. Coughlin*, the inmate-plaintiff complained that the defendants "called him names" on one occasion. *See, id*., 790 F.2d at 264. The Second Circuit affirmed the dismissal of the claim, since the plaintiff

did not allege "any appreciable injury" in connection with the name-calling. *Id*. at 265. Defendants apparently cite *Hogan v. Fischer*, which is not a race discrimination case, for the same proposition, that verbal threats or harassment, "unaccompanied by any quantifiable injury, does not constitute the violation of a federally protected right." *Hogan v. Fischer*, 2012 WL 4845609 at *6. However, in the instant case, Plaintiff is not basing his racial discrimination claim on verbal slurs or harassment. Rather, he is alleging that Defendants treated him differently than white inmates with regard to certain aspects of his confinement, including his educational placement. Plaintiff's reference to racial slurs apparently goes to support his contention that Defendants' actions were motivated by discriminatory animus. Accordingly, neither *Purcell* nor *Hogan* is on point. Defendants have not demonstrated that they are entitled to judgment as a matter of law on Plaintiff's racial discrimination claim, and consequently their motion is denied as to that claim.

## CONCLUSION

Defendants' motion [#92] for partial summary judgment is granted in part and denied in part. The application is granted as to the "John Doe" claims and the "failure to protect" claim against Knapp-David, and those claims are dismissed. The application is denied as to Plaintiff's racial discrimination claim.

So Ordered.

Dated:   Rochester, New York
         October 17, 2013    ENTER:


                                               /s/ Charles J. Siragusa
                                               CHARLES J. SIRAGUSA
                                               United States District Judge